RECEIVED
2011 JUL 18  A 10: 23

_____ P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
MONTGOMERY DIVISION

| | |
|---|---|
| CHARLES PETTY,          § <br>    Plaintiff,         § <br>                        § <br> v.                      § <br>                         § <br> NCO FINANCIAL SYSTEMS, INC. § <br>    Defendant.       § | CIVIL ACTION <br> FILE NO.: 2:11cv574 <br><br> JURY TRIAL DEMANDED |

## COMPLAINT

**COMES NOW,** CHARLES PETTY (hereinafter "Petty") plaintiff in the above-styled civil action and respectfully files this his Complaint against defendant NCO FINANCIAL SYSTEMS, INC., (hereinafter "NCO"), as follows:

### PRELIMINARY STATEMENT

1. Plaintiff brings this action pursuant to the Fair Debt Collection Practices Act (15 U.S.C. §1692 et seq.--hereinafter the "FDCPA" or "the Act"), seeking statutory damages, actual damages and attorney's fees and costs against the defendant for its use of deceptive and unfair debt collection practices in violation of the FDCPA.

2. Plaintiff also asserts claims under Alabama law for wanton or willful misconduct, seeking actual damages and punitive damages for the defendant's actions taken in willful or reckless disregard of the plaintiff's

1

legal rights, causing him foreseeable harm.

## JURISDICTION

3. Plaintiff invokes the jurisdiction of this Court pursuant to 15 U.S.C. §1692k(d). This Court has supplemental jurisdiction under 28 U.S.C. §1367(a) to hear the plaintiff's claims under the laws of the State of Alabama for wanton or willful misconduct. Venue in this District is proper in that the defendant conducts business here and the conduct complained of occurred here.

## PARTIES

4. Plaintiff is an adult natural person and a resident of ALABAMA, and a consumer as contemplated by § 1692a(3) of the Act.

5. Defendant NCO Financial Systems, Inc. (hereafter, "NCO") is a corporation organized under the laws of the State of Pennsylvania, and is transacting business in the State of Alabama.

6. Upon information and belief, defendant is in the business of collecting debts claimed to be due, including purchasing and/or obtaining assignments of portfolios of consumer debt, and at all times, relevant hereto, was a "debt collector" within the meaning of § 1692a(6) of the Act, collecting consumer debts as defined by §1692a(5) of the Act.

## **STATEMENT OF FACTS**

7. On or about March 8, 2010, NCO started a collection campaign on an alleged account, seeking to collect money from the plaintiff, Charles Petty.

8. Attached to this Complaint as Plaintiff's Exhibit 1 is a true copy (apart from redactions) of a letter from defendant NCO to Petty dated March 8, 2010.

9. In its March 8, 2010 correspondence, NCO attempted to collect on an alleged "overdraft" with the alleged balance amount of $716.63. See Pl.'s Comp. Ex. "1".

10. In fact, Petty had paid the alleged account in full and closed same with a zero balance.

11. Attached to this Complaint as Plaintiff's Exhibit 2 is a true copy (apart from redactions) of a letter sent by Robert Kaiden, Esq., counsel for Petty, to defendant NCO dated May 24, 2010.

12. NCO received the May 24, 2010 letter, a copy of which is submitted as Plaintiff's Exhibit 2.

13. In the May 24, 2010 letter, Petty's counsel disputed and requested validation of the alleged debt, pursuant to 15 U.S.C. §§ 1692g(b), 1692c(a)(2) and 1692c(b). See Pl.'s Comp. Ex. "2".

14. In the May 24, 2010 letter, Petty's counsel notified NCO that Petty disputed the debt and categorically demanded in paragraph 5 that NCO "[n]ot communicate with anyone other than the undersigned with respect to this debt"; Petty's counsel also demanded in paragraph 6 that NCO "[c]ommunicate with the undersigned **only in writing** to the address listed above"; and Petty's counsel also demanded in paragraph 7 that NCO "[c]ease all communication with third parties, pursuant to 15 U.S.C. § 1692c". See Pl.'s Comp. Ex. "2" (emphasis supplied).

15. Submitted with this Complaint as Plaintiff's Exhibit 3 is a true copy (apart from redactions) of a letter, with enclosures, from Renita Sherman, Supervisor, Verification Team, NCO Financial Systems, Inc., to Robert Kaiden, Esq. counsel for Petty, dated July 20, 2010.

16. In the July 20, 2010 letter, NCO claimed to provide verification of the alleged debt to Petty by producing to Petty's counsel bank statements for the time period of December 8, 2004 through February 8, 2005.

17. In its alleged verification, NCO's supervisor of the Verification Team, "Renita Sherman" failed to verify $60.00 of the alleged balance due by Petty in the alleged amount of $716.63 (see February 8, 2005 Bank Statement showing allegedly $656.63 overdraft). See Pl.'s Comp. Ex. "3".

18. In its alleged verification, NCO's supervisor of the Verification Team, "Renita Sherman" failed to produce to Petty any documents showing a final balance due on the alleged account in the amount of $716.63. See Pl.'s Comp. Ex. " 3".

19. In its alleged verification, NCO's supervisor of the Verification Team, "Renita Sherman" claimed the alleged debt verified, requested payment to NCO, and through a veil threat, advised Petty that even though NCO does not report to the credit bureaus, NCO has no control as to "any other company" listing said alleged account in a "credit profile". See Pl.'s Comp. Ex. " 3".

20. Submitted with this Complaint as Plaintiff's Exhibit 4 is a true copy (apart from redactions) of a letter sent to defendant NCO by Petty's counsel dated February 11, 2011.

21. Defendant NCO received the February 11, 2011 letter submitted as Plaintiff's Exhibit 4.

22. In the February 11, 2011 letter, Petty's counsel warned defendant that Petty had paid the alleged account in full and closed same with a zero balance. See Pl.'s Comp. Ex. " 4".

23. In the February 11, 2011 letter, pursuant to § 1692c(c), Petty's counsel warned defendant that Kaiden & Kaiden had advised Petty to continue to dispute the alleged debt and to not pay any money on this alleged account. See Pl.'s Comp. Ex. "4".

24. In the February 11, 2011 letter, Petty's counsel warned defendant that since May 24, 2010, NCO continued to collect the alleged debt directly from Petty by calling his residence and disturbing his family, sometimes twice and three times a day. See Pl.'s Comp. Ex. "4".

25. In the February 11, 2011 letter, Petty's counsel warned defendant that Petty is gravely ill; and that he suffers from the following ailments: heart disease (October 2007 bypass); sleep apnea; kidney problems; and due to his exposure to Agent Orange during his service in Vietnam, Petty suffers from severe joint and nerve problems (both knees must be replaced, but Petty is not healthy enough to have the surgery). See Pl.'s Comp. Ex. "4".

26. In the February 11, 2011 letter, Petty's counsel warned defendant that due to his sleep apnea, Petty can't sleep without assistive technology,-REM spar PRO, M-series machine. See Pl.'s Comp. Ex. "4".

27. On or about February 11, 2011, Petty's counsel warned defendant that due to his kidney problems, Petty depends on assistive technology, such as a kidney stint. See Pl.'s Comp. Ex. "4".

28. In the February 11, 2011 letter, Petty's counsel not only warned defendant that Petty takes several medications, but also listed same for defendant's consideration as follows: "Petty takes medications such as: Meclizine HCL 25mg (two tablets 3 times a day) for dizziness; Nitroglycerin 0.4 mgs for chest pain (3 doses taken 5 min. apart as needed with recommendation that he call 911 if pain is unchanged or worsens 5 min after 1st dose); Hydrocodone 10/acetaminophen 500mg (twice a day as needed for pain); Omeprazole 20 mg EC CAP (two capsules before breakfast for stomach acid); Simvastatin 80 mg (every evening for cholesterol); and Baclofen 10 mg (twice a day for muscle spasms); Cetirizine HCL 10 mg (every day for allergy symptoms; and Flunisolide spray (twice a day for seasonal allergies)." See Pl.'s Comp. Ex. "4".

29. In response to the February 11, 2011 letter, inclusive of new demands pursuant to § 1692c(c) regarding the collection of the alleged account, on or about February 23, 2011, NCO's counsel sent Petty's counsel a letter stating

7

that "NCO has made the business decision to close the above referenced account".

30. A true copy (apart from redactions) of the letter from NCO's counsel to Petty's counsel, dated February 23, 2011, is submitted with this Complaint as Plaintiff's Exhibit 5.

31. Despite the February 23, 2011 statements to Petty's counsel that the alleged account had been closed, NCO continued to attempt to collect the alleged debt directly from Petty by calling his residence and disturbing his family, sometimes twice a day, in violation of §§ 1692c(a)(2), 1692c(b), 1692c(c) and 1692d.

32. Submitted with this Complaint as Plaintiff's Exhibit "6" is a true copy (apart from redactions) of a letter dated March 14, 2011 which was sent to NCO's counsel.

33. NCO received the March 14, 2011 letter, a copy of which is submitted as Plaintiff's Exhibit "6".

34. On or about March 11, 2011, Petty's counsel called defendant's counsel to again warn defendant that the collection campaign targeting the Petty residence on a daily basis had to cease. See Pl.'s Comp. Ex. "6".

35. Despite Petty's counsel's repeated demands to cease all direct contact with Petty, defendant continued to target the Petty residence in an attempt to collect the alleged debt, in violation of §§ 1692c(a)(2), 1692c(b), 1692c(c) and 1692d. See Pl.'s Comp. Ex. "6".

36. In the March 14, 2011 letter, Petty's counsel advised NCO's counsel of the continuing contacts NCO was making to collect the challenged debt. See Pl.'s Comp. Ex. "6".

37. In the March 14, 2011 letter, Petty's counsel renewed in writing Petty's demands to immediately cease the continuous collection campaign targeting the Petty residence; reminded defendant of Petty's serious medical condition; and warned defendant that said campaign was occurring in violation of §1692c(c). See Pl.'s Comp. Ex. "6".

38. Even though the alleged account had been under the custody and control of a supervisor, "Renita Sherman", on or about March 14, 2011, Petty's counsel provided defendant's counsel, by e-mail, with some of Petty's records as to date, time, debt collector's name and phone number for said collector, describing some, but not all, of the latest of defendant's attempts to directly collect the alleged debt from Petty. See Pl.'s Comp. Ex. "3"; Pl.'s Comp. Ex. "7".

39. A true copy of the e-mails exchanged by defendant's counsel and plaintiff's counsel on March 14, 2011, is submitted as Plaintiff's Exhibit "7" with this Complaint.

40. On or about March 14, 2011, Petty's counsel again called defendant's counsel and warned defendant that Petty's spouse also had serious medical problems and that defendant's direct communications targeting the Petty residence were occurring while Ms. Petty was recovering from surgery, and that said communications had to cease immediately.

41. On or about March 16, 2011, Petty's counsel sent NCO's counsel a letter again explaining this situation.

42. A true copy (apart from redactions) of the March 16, 2011 letter sent to NCO's counsel is submitted as Plaintiff's Exhibit 8 with this Complaint.

43. NCO received the March 16, 2011 letter submitted as Plaintiff's Exhibit "8".

44. Despite the repeated requests by Petty's counsel to cease all direct contact with Petty, NCO continued to target the Petty residence, in violation of §§ 1692c(a)(2), 1692c(b), 1692c(c) and 1692d. See Pl.'s Comp. Ex. "8".

45. In his March 16, 2011 letter, Petty's counsel renewed in writing Petty's demands to immediately cease the continuous collection campaign targeting

the Petty residence; and reminded defendant of both Petty and his spouse's serious medical condition. See Pl.'s Comp. Ex. "8".

46. Even though the alleged account had been under the custody and control of a supervisor, "Renita Sherman" (See Pl. Comp. Ex. "3"), on or about March 18, 2011, Petty's counsel had to provide defendant with Petty's residential number as a condition for NCO's collection campaign to finally cease.

47. As a result of NCO's actions in this matter, Petty suffered emotional distress, including but not limited to feelings of frustration, anger, fear and a sense of helplessness, all of which were very significant for Petty because of his on-going medical problems. Petty's emotional distress was also aggravated because of the impact of the defendant's actions on his wife, who also suffered from on-going medical problems.

## Fair Debt Collection Practices Act
## Count One

48. Plaintiff realleges and incorporates by reference paragraphs 1 through the preceding paragraph as if fully set forth herein.

49. By unfairly using false, deceptive and misleading conduct and representations that defendant had verified the alleged debt pursuant to §§ 1692g(a)(1), defendant violated §§ 1692e, 1692e(2)(A), 1692e(5), 1692e(10), 1692f and 1692f(1). See Pl.'s Comp. Ex. "3".

50. By engaging in a collection campaign targeting Petty and Petty's residence directly despite Petty being represented by counsel, defendant violated §§ 1692c(a)(2), 1692c(b), 1692d, 1692d(5), 1692e; 1692e(2)(A); 1692e(5); 1692e(10); 1692f; and 1692f(1).

51. By unfairly using false, deceptive and misleading conduct and representations that the account had not been closed, defendant violated §§ 1692e; 1692e(2)(A); 1692e(5); 1692e(10); 1692f; and 1692f(1).

52. By engaging in a collection campaign targeting Petty and Petty's residence directly despite Petty being represented by counsel and Petty's refusal to pay the alleged debt, defendant violated §§ 1692c(c), 1692c(a)(2), 1692c(b), 1692d, 1692d(5), 1692e; 1692e(2)(A); 1692e(5); 1692e(10); 1692f; and 1692f(1).

53. Despite Petty's counsel's multiple and continuous demands for NCO to immediately cease its collection campaign against Petty, defendant continued to target the Petty residence in an attempt to collect the alleged debt in violation of §§ 1692c(c), 1692c(a)(2), 1692c(b), 1692c(c), 1692d and 1692d(5). See Pl.'s Comp. Ex. "4"; see also Pl.'s Comp. Exs. "6" and "8".

54. By unfairly using false, deceptive and misleading conduct and representations that defendant could persist in its collection campaign

against Petty despite Petty's counsel's multiple demands that said campaign cease immediately, defendant violated §§ 1692c(c), 1692c(a)(2), 1692c(b), 1692c(c), 1692d, 1692d(5), 1692e; 1692e(2)(A); 1692e(5); 1692e(10); 1692f; and 1692f(1).

55. By unfairly using false, deceptive and misleading conduct and representations that defendant had policies and procedures in place adopted to cease all collection activity on the alleged account, defendant violated §§ 1692c(c), 1692c(a)(2), 1692c(b), 1692c(c), 1692d, 1692d(5), 1692e; 1692e(2)(A); 1692e(5); 1692e(10); 1692f; and 1692f(1).

56. By impermissibly shifting the burden so that defendant's compliance with the FDCPA was conditioned on Petty's participation, involvement and input, defendant violated §§ 1692c(c), 1692c(a)(2), 1692c(b), 1692c(c), 1692d, 1692d(5), 1692e; 1692e(2)(A); 1692e(5); 1692e(10); 1692f; and 1692f(1).

57. As a result of defendant's actions, Petty suffered actual damages, as described above.

58. Therefore, defendant is liable to plaintiff for statutory damages as prescribed by §1692k(a)(2)(A), actual damages pursuant to §1692k(a)(1) in an amount to be determined at time of trial, and reasonable attorney's fees and costs pursuant to §1692k(a)(3).

## Wanton and Willful Misconduct
## Count Two

59. Plaintiff realleges and incorporates by reference paragraphs 1 through the preceding paragraph as if fully set forth herein.

60. As described in this Complaint, in its efforts to collect an alleged debt from Petty, defendant NCO took a number of actions in violation of Petty's rights under the law.

61. NCO took these actions with a knowing or reckless disregard for Petty's rights under the law.

62. As a result of NCO's actions in this matter, Petty suffered emotional distress, including but not limited to feelings of frustration, anger, fear and a sense of helplessness, problems which were aggravated by his numerous on-going medical conditions and by the impact of NCO's actions on his wife.

63. NCO knew or should have known that its actions would cause Petty emotional distress as described above.

64. Based on this conduct, NCO is liable to Petty for his actual damages sustained as a result of its actions and in addition for punitive damages in an amount to be determined by this Court.

**WHEREFORE,** the premises considered, Plaintiff respectfully prays as follows:

(a) That this case be tried by a jury;

(b) That for the defendant's violations of the FDCPA as described in Count One, plaintiff be awarded judgment against defendant for statutory damages as prescribed by §1692k(a)(2)(A), actual damages pursuant to §1692k(a)(1) in an amount to be determined at time of trial, and reasonable attorney's fees and costs pursuant to §1692k(a)(3), in an amount to be determined at time of trial;

(c) That for the defendant's wanton or willful misconduct as described in County Two, plaintiff be awarded judgment for actual damages in an amount to be determined at time of trial and for punitive damages in an amount to be determined at time of trial and his costs in this action;

(d) That this Court grant plaintiff such other and further relief as the Court deems just and proper under the circumstances.

Respectfully submitted,

CHARLES PETTY
Plaintiff
By Counsel

/s/ Edward M. Wayland
_____
Edward M. Wayland
Attorney for Plaintiff
AOC WAY004
2800 Zelda Road, Suite 100-5
Montgomery, AL 36106
(334) 409-9688
(334) 460-8760 (fax)
edwayland@yahoo.com